## SOUTHWEST METALS CO. v. GOMEZ.

(Circuit Court of Appeals, Ninth Circuit. March 2, 1925.)

No. 4445.

**1. Pleading ⬅193(1)—Complaint alleging evidential facts not demurrable.**

That a complaint alleges evidential rather than the ultimate facts does not render it demurrable.

**2. Pleading ⬅205(1)—Allegation of cause of injury held sufficient as against judicial demurrer.**

A direct allegation, in the complaint in an action for personal injury, that the accident complained of caused the injury, is sufficient as against a general demurrer.

**3. Courts ⬅376—State statute making incompetent testimony of physician as to treatment of patient binding on federal court.**

A state statute which, as construed by its highest court, prohibits a physician from contradicting the testimony of a witness as to acts done by him in the treatment of a patient, as a breach of professional confidence, is binding on a federal court in the state in an action at law

**4. Witnesses ⬅185—Statutes making communications between physicians and patient privileged to be strictly construed.**

Statutes making communications between physician and patient privileged, having a tendency to prevent a full disclosure of the truth, are to be strictly construed.

**5. Witnesses ⬅209—Statute making communications between physician and patient privileged held not to extend to nurse.**

A statute making testimony of a physician as to treatment of a patient incompetent *held* not to extend to an assistant nurse who was not a physician.

**6. Evidence ⬅528(2)—Expert testimony as to extent of impairment of plaintiff's sight held competent under the pleadings.**

Under an allegation in the complaint in an action for personal injury that, as a result of the injury, the vision of one of plaintiff's eyes

was permanently and totally destroyed, expert testimony, both as to the extent of the impairment and its effect upon the ability of plaintiff to do ordinary work and earn a livelihood, was competent.

**7. Evidence ⟝553(1)—Hypothetical question should be framed as basis for opinion of expert.**

To properly elicit the opinion of an expert, a hypothetical question embodying the facts should be framed, and it is improper practice to ask the witness his opinion based on the testimony given, some of which he may not remember and some of which he may not believe.

**8. Exceptions, bill of ⟝60(1)—Time of settlement immaterial if presented to judge in time.**

A bill of exceptions presented to the trial judge within the time allowed will not be stricken out because not settled until later.

In Error to the District Court of the United States for the District of Arizona; F. C. Jacobs, Judge.

Action at law by Francisco Gomez against the Southwest Metals Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This was an action at law to recover damages for personal injuries, based on the Employers' Liability Law of the State of Arizona (Civ. Code 1913, pars. 3153–3179). The complaint alleged that the plaintiff was employed as a miner in one of the mines operated by the defendant; that in the course of his employment he was picking rock with a bar, when a small piece of rock, dust, or débris dropped from the roof of the stope, "striking the plaintiff in the left eye, injuring said left eye; that as a result of said injury to said eye, and without fault on the part of this plaintiff, the said eye became infected, and the plaintiff's vision in his said left eye was permanently and totally destroyed." A demurrer to the complaint, and an objection to the introduction of any testimony in its support, were overruled. The plaintiff, in his own behalf, testified that on the morning after the accident certain physicians removed dirt from his eye. The physicians who attended the plaintiff were called by the defendant, and an inquiry was made as to the truth of the above statement. The testimony of the physicians was objected to upon the ground that the relation of physician and patient existed and that the testimony was incompetent. The objection was sustained. The nurse who assisted the physicians was then called for the same purpose, but her testimony was objected to for the like reason and the objection sustained. A

physician who testified on behalf of the plaintiff was asked upon cross-examination if he made it a habit of appearing for plaintiffs in personal injury cases. An objection to the question was interposed and the objection sustained. An expert witness for the plaintiff testified that the vision of his left eye was $20/100$. He was then asked if he knew what was meant by the term occupational or industrial blindness, and answered in the affirmative. He was next asked to define that term, but an objection was interposed on the ground that the testimony was immaterial and irrelevant. The objection was overruled and an exception allowed. The witness answered that vision less than $20/70$ constitutes occupational blindness; that an individual who has a total blindness of $20/70$ is incapacitated in many ways; that if a person has only $20/70$ vision in both eyes he is occupationally blind; and that the plaintiff is occupationally blind in his left eye. The plaintiff further offered the testimony of two expert witnesses as to the present condition of his left eye and the cause thereof. The defendant called two expert witnesses who stated that they had heard the testimony of the two last-mentioned witnesses. They were then asked to give their opinion as to the condition of the eye, assuming that the facts testified to by the experts for the plaintiff were true. An objection to the question was interposed and sustained. The remaining assignments of error go to the sufficiency of the testimony to support the verdict. The plaintiff had judgment below, and the defendant sued out the present writ of error.

Anderson, Gale & Miller, of Prescott, Ariz., for plaintiff in error.

Struckmeyer, Jennings & Strouse and D. A. Fraser, all of Phœnix, Ariz., for defendant in error.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). [1, 2] The objection to the complaint seems to be that it contains no direct averment that the accident caused the infection to the eye, or the subsequent blindness. No doubt, it is the better practice to plead ultimate facts and not evidence, but the plaintiff in error was not injured if the complaint gave it more information than it was justly entitled to. The general rule as to proximate cause applies here as in other cases, and we think it sufficiently appears from the complaint that the accident was the

proximate cause of the infection and loss of sight. But, in any event, the complaint contains the direct averment that the accident caused the injury to the eye, and this of itself was sufficient as against a general demurrer.

[3] If the question were an open one, much might be said against the justice and wisdom of a rule that permits a party to a suit to offer testimony tending to show that a physician removed dirt from his eye, or fragments of bone from his leg, and forbids the physician to give testimony controverting that fact; but that such is the effect of the statute of Arizona, as construed by the Supreme Court of the state does not admit of question. Thus, in Arizona Copper Co. v. Garcia, 25 Ariz. 158, 214 P. 317, a brother of the plaintiff testified in his behalf that a physician removed fragments of bone from his leg, and the physician was not permitted to controvert the testimony. See, also, Arizona & New Mexico Ry. Co. v. Clark, 235 U. S. 669, 35 S. Ct. 210, 59 L. Ed. 415, L. R. A. 1915C, 834. That statute of the state, as construed by its highest court, is controlling on this court.

The claim of privilege on behalf of the nurse presents a more difficult question. All the authorities agree that the privilege or exemption does not extend to a third person who is present and overhears the communication between the physician and the patient. Under such circumstances, some of the cases hold that both the physician and the third party may testify, while others hold that as to the physician the privilege is not waived. The defendant in error does not controvert this general rule, but contends that it has no application where the third person acts as agent of or assistant to the physician. We have examined the cases cited in support of this contention and many others, but find that in every case the agent or assistant was himself a physician or surgeon. Thus, in Raymond v. Burlington, C. R. & N. Ry. Co., 65 Iowa 152, 21 N. W. 495, and Ætna Ins. Co. v. Deming, 123 Ind. 384, 25 N. E. 86, 375, it was held that the privilege extends to information acquired by a partner of the physician attending the patient; the partner himself being a physician. In Smart v. Kansas City, 208 Mo. 162, 105 S. W. 709, 14 L. R. A. (N. S.) 565, 123 Am. St. Rep. 415, 13 Ann. Cas. 932, it was held that assistant physicians and surgeons in a hospital come within the exemption. In Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770, it was held that information obtained by a physician

who was called in consultation was privileged. A similar ruling was made in Morris v. New York, O. & W. Ry. Co., 73 Hun, 560, 26 N. Y. S. 342. See, also, Green v. Town of Nebagamain, 113 Wis. 508, 89 N. W. 520; Mutual Life Ins. Co. v. Owen, 111 Ark. 554, 164 S. W. 720; Prader v. National Masonic Accident Ass'n, 95 Iowa, 149, 63 N. W. 601.

The rule excluding hospital records kept under the direction of the physician has no application here, and the same is true of cases where the intervention of a third party is strictly necessary to enable the physician to communicate with the patient. Springer v. Byram, 137 Ind. 15, 36 N. E. 361, 23 L. R. A. 244, 45 Am. St. Rep. 159; and North American Union v. Oleske, 64 Ind. App. 435, 116 N. E. 68.

The statute is limited by its terms to physicians and surgeons, and in this connection it is a significant fact that an earlier paragraph of the same section extends the privilege of the attorney to his secretary, stenographer, and clerk, concerning any fact, the knowledge of which has been acquired in such capacity. We are aware that it has been said that the extension of the exemption to the secretary, stenographer, and clerk of the attorney adds nothing to the statute; but we are far from convinced that such is the case. Many privileges and exemptions allowed to professional men are not enjoyed by their clerks and agents, such as exemption from jury duty, and the like. Furthermore, the privilege between attorney and client, as recognized by the common law, extended to secretaries and clerks, and it might well be held that a general statute recognizing the privilege as between attorney and client only was simply declaratory of the common law. But the exemption in favor of the physician and surgeon is statutory only, and for that reason there is little or no analogy between the clerk of the attorney and the agent of or assistant to the physician or surgeon. Thus, in Howe v. Regensburg, 75 Misc. Rep. 132, 132 N. Y. S. 837, it was claimed that a dentist was within the privilege; but in answer to that contention the court said: "At common law communications between physician and patient were not legally privileged. * * * The legal privilege seems first to have been recognized in New York in 1828. * * * To the extent, therefore, to which the privilege can now be said to exist, it must find its support in some statutory enactment. Whatever may be urged for or against the existence of the privilege, we can see no good reason

for extending it by implication or construction."

[4] While such statutes should be liberally construed, as between physician and patient, their necessary tendency is to prevent a full disclosure of the truth, and for that reason they are strictly construed and limited to cases falling within the principles on which they are based.  40 Cyc. 2362.

[5] If public policy demands that the privilege of the physician and surgeon should be extended to nurses and other attendants who are neither physicians nor surgeons, the change should be made by the Legislature, not by judicial construction.

For these reasons, we are of opinion that the ruling of the court excluding the testimony of the nurse was prejudicial error.

[6] The objection to the question, "Do you make it a habit of appearing for plaintiffs in these personal injury cases?" was properly sustained on the ground that the question was too indefinite and called for the conclusion of the witness, if for no other reason.  The objection to the testimony as to what was meant by occupational or industrial blindness was based upon the ground that there was no such issue in the case.  But the complaint did allege that the vision was permanently and totally destroyed, and under that allegation it was competent to prove by an expert witness both the extent of the impairment of the vision and its effect upon the ability of the defendant in error to do ordinary work or earn a livelihood.

[7] "A desire to economize time has led a number of courts to sanction the practice, in cases where the facts are undisputed, of dispensing with a recital of facts in a hypothetical question and asking the witness to state his judgment 'upon the evidence,' or even upon such a part of it as is material to the inquiry, although it is conceded to be the better practice to proceed in the regular manner and frame a hypothetical question, one objection to the question upon the evidence being that the witness may not be able to remember all the testimony, and to allow him to proceed upon what he chances to recollect deprives the parties of any knowledge as to the real basis of his inference."  22 C. J. 717.

But there are many authorities to the contrary.  As said by the present Chief Justice, in Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, 7 C. C. A. 581, 22 L. R. A. 620, in answer to a similar objection: "This question was clearly incompetent, because it asked the witness, who was a physician, to make his own inference as to what the evidence of the other witness tended to show, and then, upon such inference, to give his opinion.  To properly elicit his opinion as to the character of the autopsy, and its usefulness in showing the cause of the death, counsel should have stated the scope and character of the autopsy as he understood it, so that the jury, in weighing the answer of the witness, could know exactly upon what facts it was based.  The difference between this question and the one put to the physician performing the autopsy is that here the witness was asked to weigh other men's evidence, a function peculiarly belonging to the jury, while there the witness was asked an expert opinion of bodily conditions which he saw with his own eyes."

The right of the plaintiff in error to have the question answered as propounded was discretionary with the trial court at best, and the court having exercised its discretion against the right, it was the duty of counsel to propound his question in the proper form before seeking a review here.

[8] The testimony was ample to carry the case to the jury, and the assignment of error based upon its insufficiency calls for no discussion.  Prior to the hearing in this court, the defendant in error interposed a motion to strike the bill of exceptions upon the ground that it was not settled, signed, and filed within the time required by law.  It appears from an inspection of the record that the bill of exceptions was presented to the trial judge within the time allowed by an order entered during the term at which the judgment was entered.  Such being the case, the bill of exceptions was timely presented, and the fact that it was not settled until a later day is immaterial.  Michigan Insurance Bank v. Eldred, 143 U. S. 293, 298, 12 S. Ct. 450, 36 L. Ed. 162; O'Connell v. United States, 253 U. S. 142, 146, 40 S. Ct. 444, 64 L. Ed. 827.

We find no error in the record, save in the exclusion of testimony; but for that error the judgment is reversed and the cause is remanded for a new trial.